684 P.2d 280

**Edward Arthur NIELSON, Claimant-Respondent, Cross-Appellant,**

v.

**STATE of Idaho, INDUSTRIAL SPECIAL INDEMNITY FUND, Defendant-Appellant, Cross-Respondent.**

No. 14971.

Supreme Court of Idaho.

June 27, 1984.

M. Jay Meyers, Pocatello, for defendant-appellant, cross-respondent.

Kenneth E. Lyon, Jr., of Lyon & Jorgensen, Pocatello, for claimant-respondent, cross-appellant.

DONALDSON, Chief Justice.

On April 28, 1980, while working for Allied Paving Corporation, Claimant Nielson was involved in an accident which resulted in a compression fracture of his first lumbar vertebra. Claimant was treated by Doctor Gresham. Subsequently, claimant

and Allied's surety entered into a compensation agreement reflecting the 15% of the whole man impairment rating given to claimant by Doctor Gresham.

On June 8, 1981, claimant filed an application for hearing with the Commission seeking benefits for total permanent disability. The application was filed against Allied, its surety, and the Industrial Special Indemnity Fund (ISIF). Subsequently, claimant and Allied entered into a settlement agreement, and Allied and its surety were dismissed from the case.

Claimant had suffered previous injuries. In 1944, claimant had suffered a dislocated right hip. Since that time, the condition of claimant's right hip has gradually worsened. In 1954, claimant fractured his right leg below the knee. However, there is no evidence that claimant suffers any residual effects as a result of this injury.

At the time of the 1980 accident, claimant was fifty-three years old. Claimant left school during his ninth grade year. Since leaving school, claimant has been employed as a jackhammer operator, truck driver, farm worker, construction mechanic, and millwright. From 1970 through 1980, claimant worked predominantely as a truck driver and equipment operator.

After a hearing on the matter, the Industrial Commission filed a decision in which it concluded that Claimant Nielson is totally and permanently disabled as a result of being a member of the "odd-lot" category, and that 85% of claimant's disability resulted from his pre-existing impairment. Consequently, the Commission determined that claimant is entitled to recover permanent disability benefits for the 85% disability resulting from his pre-existing impairment from ISIF. ISIF appeals from the decision of the Commission, and claimant cross-appeals the Commission's order denying claimant's motion to lift the stay of judgment pending the appeal.

The issues on appeal are essentially as follows: (1) Did the Commission err in finding claimant to be totally and permanently disabled? (2) Did the Commission err in finding that claimant sustained a perma-

nent disability of 15% of the whole man as a result of the April, 1980 accident? (3) Did the Commission err in computing the benefits that claimant is entitled to receive? In addition, the cross-appeal raises the following issue: Did the Commission err in denying claimant's motion to lift the stay of judgment pending the appeal?

I.

(A). TOTAL AND PERMANENT DISABILITY

ISIF attacks the Commission's finding, that claimant is a member of the "odd-lot" category and therefore totally and permanently disabled, on three grounds. Initially, ISIF argues that Claimant Nielson failed to present a prima facie case by failing to show what other types of employment he has attempted since his industrial accident. Secondly, ISIF contends that even if claimant has made out a prima facie case, that case has been rebutted by ISIF's presentation of evidence showing suitable work which is regularly and continuously available to claimant. Finally, ISIF asserts that the Commission erred when it denied ISIF's motion to have claimant undergo an artificial hip replacement prior to the determination of claimant's disability.

■ In order for a claimant to make out a prima facie case that he is an "odd-lot" worker, "he must show what other types of employment he has attempted." *Gordon v. West*, 103 Idaho 100, 105, 645 P.2d 334, 339 (1982). ISIF contends that Claimant Nielson has failed to show that he has attempted any employment other than as a truck driver since his accident, and that therefore, he has failed to show that he is a member of the "odd-lot" category.

■ The determination of whether or not a claimant is a member of the "odd-lot" category is a factual determination within the discretion of the Commission. *Carey v. Clearwater County Road Department*, 107 Idaho 109, 686 P.2d 54 (1984); *Gordon v. West, supra; Reifsteck v. Lantern Motel & Cafe*, 101 Idaho 699, 619 P.2d 1152

(1980). Where contested findings of the Commission are supported by substantial, competent evidence, those findings will not be disturbed on appeal. I.C. § 72–732(1); *In re Chavez*, 104 Idaho 279, 658 P.2d 950 (1983); *Bush v. Bonners Ferry School Dist. No. 101*, 102 Idaho 620, 636 P.2d 175 (1981); *Maez v. Thunderbird Market*, 101 Idaho 128, 609 P.2d 660 (1980).

 Although there were no findings by the Commission that Claimant Nielson had attempted other types of employment, the Commission did find that Nielson had sought employment unsuccessfully. In addition, the Commission found that claimant was 55 years of age, had an eighth grade education, was considerably restricted in his movements and ambulation, and was unable to use any of the skills he had acquired due to the injuries to his hip and back. All of these findings are supported by substantial, competent evidence, and therefore, we hold that Claimant Nielson did make a prima facie showing that he is an "odd-lot" worker. Consequently, the burden shifted to ISIF to demonstrate the availability of suitable work for the claimant.

 ISIF contends that it met its burden of proof by putting on evidence of a job survey conducted by Mr. Loya, a field consultant with the Industrial Commission Rehabilitation Division. According to the testimony of Mr. Loya, five different employers had had openings at various times during 1981 for sedentary jobs. However, as we stated in *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 565 P.2d 1360 (1977), ISIF had the burden of introducing evidence that there was an actual job within a reasonable distance from claimant's home which he was able to perform, or for which he could have been trained. Furthermore, ISIF had the burden of showing that claimant had a reasonable opportunity to be employed at that job. *Id.* While Mr. Loya's testimony in regard to the past availability of sedentary employment in the Pocatello area may be relevant, we agree with the Commission's

conclusion that this testimony alone was insufficient to show "that the claimant had a reasonable opportunity to be employed at any specific job." Consequently, we affirm the Commission's conclusion that ISIF failed to show some kind of suitable work regularly and continuously available to claimant.

 Lastly, ISIF contends that the Commission should not have made any determination as to claimant's disability until claimant agreed to undergo an artificial hip replacement. However, neither of the doctors who examined Claimant Nielson recommended a hip replacement at the present time. Therefore, we affirm the Commission's denial of ISIF's motion to have claimant undergo an artificial hip replacement.

(B). APPORTIONMENT OF DISABILITY

Prior to concluding that Claimant Nielson is totally and permanently disabled, the Commission found that claimant had a pre-existing permanent physical impairment of 20% of the whole man. The Commission failed to make a finding as to the permanent physical impairment which resulted from the April, 1980 accident. However, the Commission concluded that as a result of the April, 1980 accident, claimant sustained a permanent disability of 15% of the whole man for which the employer and its surety were liable. Consequently, the Commission concluded that ISIF is liable for the remaining 85% permanent disability. ISIF contends that these conclusions of the Commission are in error.

 According to I.C. § 72–332, when the combined effects of both a pre-existing impairment and a subsequent work-related injury cause a workman to suffer total and permanent disability, the employer and its surety are liable for compensation benefits to the extent of the disability caused by the work-related injury, and the remainder of the compensation benefits are paid to the workman out of the Industrial Special In-

demnity Fund.[1] Essentially, the statute provides for an apportionment of nonmedical factors between the employer/surety and ISIF. We have thoroughly dealt with this issue in the recently released case of *Carey v. Clearwater County Road Department*, 107 Idaho 109, 686 P.2d 54 (1984). In that case we concluded that "the appropriate solution to the problem of apportioning the non-medical disability factors, in an odd-lot case where the fund is involved, is to prorate the non-medical portion of disability between the employer and the fund, in proportion to their respective percentages of responsibility for the physical impairment." *Id.* at 63. In order to apply this rule, it is necessary for the Commission to make a determination of both the percentage of pre-existing permanent impairment, and the percentage of permanent impairment resulting from the work-related accident. In this case, the Commission found that claimant had a pre-existing permanent impairment of 20% of the whole man. However, the Commission failed to make a determination of the percentage of permanent impairment resulting from the April, 1980 accident. Thus, it is impossible to prorate the nonmedical factors in order to determine the extent of permanent disability resulting from the pre-existing condition for which ISIF is responsible. Therefore, we reverse the Commission's conclusions as to the extent of disability resulting from the pre-existing permanent impairment, and the April, 1980 accident. Furthermore, we remand for a determination of the percentage of permanent impairment resulting from the April, 1980 accident, and instruct the Commission to apportion the nonmedical disability factors between the employer/surety and ISIF in determining the ultimate percentage of disability for which each is liable in accordance with *Carey, supra.*

### (C). COMPUTATION OF BENEFITS

ISIF asserts that the Commission erred in its computation of benefits. Although we are reversing and remanding to the Commission for a reapportionment of the nonmedical factors (*see* Part I.B., *supra*), such reapportionment will not change the total amount of benefits due to claimant, but will only redistribute the percentages of liability for the benefits between the employer/surety and ISIF. Therefore, we must address the issues raised by ISIF as to the computation of the total amount of benefits to which Claimant Nielson is entitled.

In computing the benefits due to claimant, the Commission found that claimant was totally and permanently disabled as of January 19, 1982, the date of the hearing. Furthermore, the Commission found that claimant was entitled to benefits at the rate of 90% of the current average weekly state wage during 1982. The Commission then acknowledged that the employer's surety paid benefits to claimant commencing October 7, 1980, through March 15, 1982. Therefore, for the period between January 19, 1982, and March 15, 1982, the Commission allowed ISIF a set-off of the amount paid by the employer's surety against the amount which ISIF was required to pay.

■ ISIF alleges that the Commission made two errors in computing these benefits. Initially, ISIF argues that the 75 weeks of permanent partial disability benefits paid by the employer's surety should

---

1. I.C. § 72–332(1) reads in pertinent part:

   **"72–332. Payment for second injuries from industrial special indemnity account.—** (1) If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his compensation benefits out of the industrial special indemnity account."

have commenced on January 19, 1982, the date the Commission found that claimant was totally and permanently disabled. According to ISIF, all of the employer's payments prior to that date constituted temporary total disability payments, and thus, the employer's surety should be required to pay 75 weeks of permanent partial disability beginning on January 19, 1982. However, what ISIF has failed to realize is that there was never any dispute as to the permanent nature of claimant's disability prior to January 19, 1982, and that only "the *extent* of the claimant's permanent disability had not been determined and was in dispute." (Emphasis added.) Therefore, the employer's payments which commenced on October 7, 1980, and extended through March 15, 1982, were in fact permanent partial disability benefits and not temporary total disability benefits. Consequently, the Commission's computation of benefits in this regard was correct.

■ ISIF also contends that the Commission was in error in awarding claimant benefits at the rate of 90% of the current average weekly state wage. ISIF contends that under I.C. § 72–408, claimant is entitled only to 60% of the currently applicable average weekly state wage. However, a thorough reading of I.C. §§ 72–408 and 72–409 reveals that the Commission was not in error.[2] Pursuant to I.C. § 72–408(1), prior to its amendment in 1982, Claimant Nielson was entitled to benefits equal to 60% of *his* average weekly wage for a period not exceeding fifty-two weeks. However, I.C. § 72–409(1) instructs that the benefits provided for in I.C. § 72–408(1) are subject to a maximum of 90% of the currently applicable average weekly *state* wage. In this case, 60% of Claimant Nielson's average weekly wage was in excess of 90% of the currently applicable average weekly state wage. Therefore, Claimant Nielson was only entitled to benefits in the amount of 90% of the currently applicable average weekly state wage, which is in fact what the Commission determined. Consequently, the Commission's computation of benefits in this regard was correct. Therefore, we affirm the Commission's computation of the total amount of benefits to which Claimant Nielson is entitled.

## II.

■ On cross-appeal, Claimant Nielson argues that the Commission erred when it denied his motion to permit collection of the judgment pending the appeal. In support of his argument, claimant cites I.C. § 72–1368(j). However, I.C. § 72–1368(j) applies only to unemployment benefits, and is therefore inapplicable herein. Both I.C. § 72–731 and I.A.R. 13(d) provide that upon an appeal to the Supreme Court from the Industrial Commission, the award is stayed. Therefore, we affirm the Commission's order denying claimant's motion to

---

2. I.C. § 72–408, prior to its amendment in 1982, read in pertinent part as follows:

"**72–408. Income benefits for total and partial disability.**—Income benefits for total and partial disability during the period of recovery, shall be paid to the disabled employee subject to deduction on account of waiting period and subject to the maximum and minimum limits set forth in section 72–409, Idaho Code, as follows:

"(1) Total disability for employee without dependent children. To an employee without dependent children, but not to exceed a period of fifty-two (52) weeks, an amount equal to sixty per cent (60%) of his average weekly wage and thereafter an amount equal to sixty per cent (60%) of the currently applicable average weekly state wage."

I.C. § 72–409, prior to its amendment in 1981, read in pertinent part as follows:

"**72–409. Maximum and minimum income benefits for total disability.**—(1) The weekly income benefits provided for in section 72–408(1) shall be subject to a maximum of ninety per cent (90%) and a minimum of forty-five per cent (45%) of the currently applicable average weekly state wage, provided however, that in no case shall the income benefits provided for in either sections 72–408(1) or 72–408(2) exceed ninety per cent (90%) of the employee's average weekly wage except as benefits may be increased by reason of increases in the average weekly state wage as computed in subsection (2) hereof, nor shall income benefits subsequent to the first fifty-two (52) weeks of total disability exceed income benefits paid during the first fifty-two (52) weeks of total disability except as the same may be increased by reason of increases in the average weekly state wage."

permit collection of judgment pending appeal.

The decision of the Industrial Commission is affirmed in part, reversed in part and remanded for further proceedings in accordance with the views expressed herein.

No costs are awarded on appeal.

No attorney fees on appeal.

SHEPARD, BISTLINE and HUNTLEY, JJ., concur.

BAKES, J., concurs in the result.