771 P.2d 519

William HEGEL, Claimant–Respondent,

v.

KUHLMAN BROTHERS, INC., Employer, and Argonaut–Northwest Insurance Company, Surety, Defendants,

and

State of Idaho, Industrial Special Indemnity Fund, Defendant–Appellant.

No. 16965.

Supreme Court of Idaho.

March 20, 1989.

Skinner, Fawcett & Mauk, Boise, for defendant-appellant. William L. Mauk, argued.

Cooke, Lamanna, Smith & Cogswell, Priest River, for claimant-respondent. Nicholas M. Lamanna, argued.

SHEPARD, Chief Justice.

This is an appeal from an order of the Industrial Commission finding claimant to be totally and permanently disabled under the odd-lot doctrine, and apportioning liability for the non-medical portion of the disability between the employer's surety and the Industrial Special Indemnity Fund. Only the Special Indemnity Fund appeals the decision of the Industrial Commission. We affirm.

Claimant Hegel is now 67 years of age. He attended school through the eighth grade and his reading ability is fair. Sub-

stantially all of his life has been spent in the logging industry. In 1979, while working for an employer not a party to this action, Hegel sustained an injury to his back and was temporarily and totally disabled. In June, 1982, while employed by defendant non-appellant Kuhlman Brothers, Inc., as a sawyer falling trees, he suffered an accident which resulted in injuries to the head, lacerations to the right side of his head and right ear, fracture of ribs, and an injury to his left shoulder and chest.

Upon application a hearing was held before the Commission and the testimony of several doctors and two vocational consultants was offered in the form of depositions. Thereafter the Commission concluded and found that Hegel suffered an impairment of fifteen percent of the whole man as a result of the injury in 1979, an impairment of nine percent of the whole man as a result of the 1982 accident, and an additional seventy-six percent disability as a result of non-medical factors such as age, training, transferable skills, background and work experience. Consequently, the Commission found Hegel was totally and permanently disabled within the odd-lot category as of January 4, 1984. The non-medical portion of the disability was apportioned between the employer, Kuhlman Brothers, Inc., and the Special Indemnity Fund in the same proportion as those parties shared responsibility for Hegel's physical impairment, i.e., employer-surety responsible for thirty-seven and one-half percent of the whole man permanent/partial disability, and the Special Indemnity Fund sixty-two and one-half percent of the whole man permanent/partial disability. The Commission further concluded that claimant's employment was not seasonal, and therefore claimant's average wage should be determined pursuant to the provisions of I.C. § 72–419(4)(b).

■ It is the principal contention of the Special Indemnity Fund that Hegel is not entitled to odd-lot classification, and is therefore not totally and permanently disabled. The odd-lot category exists for those persons who are so injured as to be unable to perform services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist. *Arnold v. Splendid Bakery*, 88 Idaho 455, 401 P.2d 271 (1965). The Special Indemnity Fund asserts that Hegel failed to present a prima facie case in that he failed to attempt to find other types of employment following his industrial accident.

Whether or not a claimant is a member of the "odd-lot" category is a factual determination within the discretion of the Industrial Commission. *Carey v. Clearwater County Road Department*, 107 Idaho 109, 686 P.2d 54 (1984); *Nielson v. State Industrial Special Indemnity Fund*, 106 Idaho 878, 684 P.2d 280 (1984); *Gordon v. West*, 103 Idaho 100, 645 P.2d 334 (1982). "In order for a claimant to make out a prima facie case that he is an 'odd-lot' worker, he must show what other types of employment he has attempted." *Nielson v. State Industrial Special Indemnity Fund*, 106 Idaho at 880, 684 P.2d 280, quoting in part *Gordon v. West*, 103 Idaho at 105, 645 P.2d 334.

I.C. § 72–425 requires the Industrial Commission to consider the claimant's "present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by non-medical factors ..." In *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 406, 565 P.2d 1360, 1363 (1977), it is stated that "[i]f the evidence of the medical and non-medical factors places a claimant prima facie in the odd-lot category the burden is then on the employer, the Fund in this case, to show some kind of suitable work is regularly and continuously available to the claimant." (Citations omitted.)

In the instant case the Commission determined that although claimant had not attempted to obtain full time work, "the combination of his relatively advanced age, his limited job experience, his particular physical impairments, both of his upper extremities and his lower back, render such attempts futile."

If the Commission's findings of fact are supported by substantial competent evidence, they will not be disturbed on appeal. *Snyder v. Burl C. Lange, Inc.*, 109 Idaho 167, 706 P.2d 56 (1985). We have carefully reviewed the record and hold that the Commission's findings are supported by substantial competent evidence, and hence such findings will not be disturbed on appeal.

I.C. § 72–419(6) provides for the determination of weekly wages for occupations which are exclusively seasonal. The Commission held that there was no evidence before it from which it could conclude that claimant's employment was exclusively seasonal, and hence the Commission applied I.C. § 72–419(4)(b) in its determination of claimant's average weekly wage. Again, our examination of the record discloses that the Commission's findings of fact are supported by substantial competent evidence, and they will not be disturbed.

The order of the Industrial Commission is affirmed; costs to respondent.

HUNTLEY and JOHNSON, JJ., and TOWLES, District Judge, Pro Tem., concur.

BAKES, Justice, specially concurring:

While I agree with the majority that the Commission's order finding claimant Hegel to be totally and permanently disabled should be affirmed, I write separately (1) to point out that neither the Commission nor the majority needed to conduct an odd lot analysis under the particular facts of this case; and (2) to express concern regarding problems inherent in the odd lot doctrine as it presently exists.

I.

This case is unique because the Commission concluded that Hegel is totally and permanently disabled under two different legal theories. It first found total permanent disability because Hegel's medical impairments together with his non-medical factors totaled 100%. Then, in a different finding, it also found Hegel totally and permanently disabled under the odd lot doctrine. To my knowledge, no other case has ever come before this Court under such a dual-theory scenario.

The Commission did not find that Hegel was in the odd lot category as a consequence of the combination of the 15%, the 9% and the 76% factors. Rather, the Commission made two separate and distinct conclusions. The first conclusion was that a combination of Hegel's medical impairments (15% plus 9%) and his pertinent non-medical factors (76%) resulted in 100% disability. Thereafter the Commission further found that Hegel was also in the odd lot category. The Commission, however, did not tie the odd lot determination together with the 100% disability conclusion.[1]

Even though the Commission found Hegel to be totally and permanently disabled under both an ordinary disability determination and under the odd lot doctrine, it need not have done so. Once the Commission found that claimant met his burden of proving 100% disability via his medical impairment and pertinent non-medical factors, there was no need for the Commission to go further and consider the burden-shifting odd lot doctrine. Likewise, our analysis need go no further than to show that there was substantial competent evidence supporting the Commission's findings regarding its initial 100% disability conclusion. If there is substantial competent evidence to support a 100% disability finding, then it is not necessary to go further and discuss the Commission's odd lot conclusion. Once 100% disability is found by the Commission on the merits of a claimant's case, claimant has proved his entitlement to 100% disability benefits, and there is no need to employ the burden-shifting odd lot doctrine.

---

1. In Conclusions of Law Nos. III and IV, the commission expressly stated that Hegel "is totally and permanently disabled" as a result of the 15% impairment, the 9% impairment, and the 76% disability resulting from non-medical factors. (15% + 9% + 76% = 100%) Then la-

ter, in Conclusion of Law IX, the Commission expressly *"further concluded"* that Hegel falls within the odd lot category. In other words, the Commission found Hegel to be 100% disabled before it ever considered the odd lot doctrine.

A review of our prior cases discloses that Idaho recognized 100% disability on the merits of a claimant's case long before this Court ever considered and adopted the burden-shifting odd lot doctrine. I believe the odd lot doctrine comes into play *only* when the claimant has proved something less than 100% disability before application of the doctrine. Our seminal odd lot case is *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 565 P.2d 1360 (1977). In *Lyons* we recognized the odd lot doctrine for the first time. *Lyons* came after the legislature had completely revamped the worker's compensation scheme in 1971. Since *Lyons*, this Court has handed down numerous decisions directly dealing with the odd lot doctrine which demonstrate that the odd lot doctrine only comes into play when the claimant has proved something less than 100% disability. Perhaps the most instructive case is *Mapusaga v. Red Lion Riverside Inn*, 113 Idaho 842, 748 P.2d 1372 (1987). In *Mapusaga*, claimant was found to have a 17% medical impairment. When pertinent non-medical factors were considered, claimant's permanent disability rose to 97% of the whole man—not quite 100% permanent disability. The Commission found that claimant's disability (97%) made her a prima facie odd lot worker, and since the employer had not rebutted claimant's prima facie case by showing that some kind of suitable work was regularly and continuously available to claimant, the Commission, pursuant to the odd lot doctrine, increased her permanent disability to 100%, or total disability. Had the claimant in *Mapusaga* been 100% permanently disabled in the first place, there would have been no need (nor any room) for application of the odd lot doctrine in order to increase her disability to 100%.

In addition to *Mapusaga*, every other Idaho case since *Lyons* dealing with this issue has applied the odd lot doctrine when the claimant has something less than 100% disability before application of the doctrine. *Kindred v. Amalgamated Sugar Co.*, 114 Idaho 284, 756 P.2d 401 (1988) (19% impairment increased to 100% disability under odd lot doctrine); *Nielson v. Industrial Special Indemnity Fund*, 106 Idaho 878, 684 P.2d 280 (1984) (35% impairment increased to 100% disability under odd lot doctrine); *Carey v. Clearwater County Road Dept.*, 107 Idaho 109, 686 P.2d 54 (1984) (50% impairment increased to 100% disability under odd lot doctrine); *Francis v. Amalgamated Sugar Co.*, 98 Idaho 407, 565 P.2d 1364 (1977) (25% disability increased to 100% disability under odd lot doctrine); and *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 565 P.2d 1360 (1977) (45% effective impairment increased to 100% disability under odd lot doctrine).

These cases recognized that the claimant had something less than total disability before application of the odd lot doctrine. However, in each it also appears that the claimant "can perform no services other than those which are so limited in quality, dependability or quantity that a reasonable stable market for them does not exist," and as a result claimant was determined prima facie to be an odd lot worker. *Lyons*, 98 Idaho at 406, 565 P.2d 1360. In that situation, the burden then shifts from the claimant to the employer, and when the employer is not able to show that some kind of suitable work is regularly and continuously available to the claimant, the odd lot doctrine is satisfied, and total permanent disability is the effective result, even though claimant's medical impairment and non-medical factors do not total 100%.

Total permanent disability under the odd lot doctrine is not achieved until: (1) the evidence places the claimant prima facie in the odd lot category; (2) the burden then shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant; and (3) the employer is not able to carry that burden. Thus, the analysis under an odd lot determination is quite different, and procedurally more complex, than the analysis which applies when a claimant simply proves in the first instance that his medical impairment, together with his non-medical factors, totals 100%, which constitutes total permanent disability. This latter method of analysis was the way total permanent disability was always proved before the "odd lot" doctrine was adopted in the *Lyons* case. It was utilized here, and on it

alone we should affirm the Commission's order.

## II.

The instant case, as have all other odd lot cases, points out some of the problems inherent in the odd lot doctrine as it presently exists. Neither this Court nor the Industrial Commission has yet supplied any rationale or guidelines suitable to resolving those problems.

First, it is axiomatic that the burden of proof in an ordinary worker's compensation case rests upon the claimant. *Johnson v. Bennett Lumber Co.*, 115 Idaho 241, 766 P.2d 711 (1988); *Neufeld v. Browning Ferris Industries*, 109 Idaho 899, 712 P.2d 600 (1985). Even in an odd lot case, the claimant must initially show that he is a prima facie odd lot worker. *Gordon v. West*, 103 Idaho 100, 104, 645 P.2d 334, 338 (1982) ("A claimant must establish a prima facie case that he is in the odd lot category.").

The first problem with the odd lot doctrine comes when a claimant sets out to prove his prima facie case. Nowhere have the elements of a prima facie odd lot case ever been specifically delineated by this Court. Must a certain percentage of impairment or disability first be proved? If so, what is that threshold? How are claimant's pertinent non-medical factors to be handled? Are they treated differently in an odd lot case than they are in an ordinary disability determination? Will temporary economic downturns in the community have any bearing upon either the employee's or the employer's burden of proving whether "suitable work is regularly and continuously available to the claimant"?

*Lyons* and its progeny provide little guidance in this area. In *Lyons*, this Court stated that the claimant must show that he "can perform no services other than those which are so limited in quality, dependability or quantity that a reasonable stable market for them does not exist." 98 Idaho at 406, 565 P.2d at 1363. In *Gordon v. West*, 103 Idaho 100, 104, 645 P.2d 334, 338 (1982), we held that it was the claimant's burden "to prove the unavailability of suitable work in attempting to establish his alleged total disability," and that "he must show what other types of employment he

has attempted." And in *Nielson v. Industrial Special Indemnity Fund*, 106 Idaho 878, 881, 684 P.2d 280, 283 (1984), it was noted "that [claimant] had sought employment unsuccessfully." While all of these cases talked about the claimant's need to prove a prima facie case, none of them delineates what the elements of a claimant's prima facie odd lot case are. Consequently, claimants and employers are left wondering just exactly what it is that must be proved in order to establish a prima facie case of odd lot.

The failure, or perhaps inability, of this Court to define what the elements of a prima facie case are and to establish the threshold which a claimant must prove before he has proved a prima face case, leads to the second problem inherent in the odd lot doctrine, *i.e.*, neither party knows if the claimant has carried his burden until after the Commission renders its odd lot decision which is after all the hearings are completed and all the evidence is submitted. The first time the employer is put on notice that the burden has actually shifted to it to go forward with evidence is usually when the Commission's memorandum opinion and order has issued after the close of the presentation of all the evidence. By then it is too late for the employer to attempt to carry its burden. Although an employer is usually aware that an odd lot claim is being made, and should be aware that the burden of proof could shift to it when the claimant's prima facie odd lot case has been made, if the litigants don't know when the prima facie odd lot case has been proved, then likewise no one is put on notice that the burden has shifted from the claimant to the employer. And if the employer does not carry its burden simply because it was not aware the burden had shifted to it, that may well present a constitutional notice and due process problem.

Another problem inherent in the present odd lot doctrine becomes evident when the employer attempts to meet its burden. After reading *Lyons*, an employer is told that it must "show that some kind of suitable work is regularly and continuously available to the claimant." 98 Idaho at 406, 565 P.2d at 1363. This phraseology, however, is also ambiguous, nebulous and unquanti-

fied. Over what period of time must the employer look for suitable work, and what are the effects of seasonal, recessionary or other economic factors on that question? The determination of whether the employer has met its burden must be made by the Commission guided only by the vague and ambiguous statements which our cases have made.

The foregoing are only some of the problems inherent in the odd lot doctrine. We need not have reached them in this case because the Commission's finding of 100% disability should preclude any further consideration of the odd lot doctrine. However, if we are going to consider odd lot, I believe we should reconsider whether the entire odd lot doctrine really contributes anything to a meaningful analysis of disability under worker's compensation laws. It may well be that the too numerous problems inherent in any odd lot analysis do not warrant the continuation of the doctrine which, in the end, is nothing more than a burden-shifting device. The existing statutory means of determining total permanent disability may well be adequate to the task without resort to such an ambiguous analysis as our present cases demonstrate exists in the odd lot doctrine.