865 P.2d 946

Albert D. NELSON, Claimant–Appellant,

v.

DAVID L. HILL LOGGING, Employer, and Associated Loggers Exchange, Surety, Defendants–Respondents.

No. 19907.

Supreme Court of Idaho, Coeur d'Alene, October 1993 Term.

Dec. 6, 1993.

Michael J. Vrable, Hayden, for appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondents. Thomas V. Munson argued.

JOHNSON, Justice.

This is a workers' compensation case. We conclude that there is substantial and competent evidence to support the Industrial Commission's findings that the employee did not establish a prima facie case that he was an odd-lot worker and to support the Commission's rating of the employee's permanent partial impairment.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Albert D. Nelson was employed full-time by David L. Hill Logging as a faller. In the course of his employment, Nelson was struck by a falling tree which fractured his left leg. At the time of the accident, Nelson was fifty-three years old. He had an eighth grade education and had worked in the timber industry for most of his adult life. Following the accident, Nelson applied for workers' compensation benefits. Associated Loggers Exchange is the employer's surety. David L. Hill Logging and Associated Loggers Exchange are referred to in this opinion as the "employer."

Nelson's leg was slow to heal. Approximately eight months following the accident, Nelson underwent surgery to graft and fuse the bone. Finally, the fracture set solidly and Nelson was able to walk again. The treating physician released Nelson "for any kind of work as of February 15[, 1990]."

Nelson then consulted a dermatologist concerning treatment for a skin rash on his leg near the fracture site. The dermatologist concluded that the rash was "stasis dermatitis" and treated it with medicated cream for several months. In his testimony before the Commission, the dermatologist was asked whether he had an opinion "to a medical certainty that being more probably than not that the dermatitis was caused by the fracture." The dermatologist testified he could not say for certain.

On May 15 and 29, 1990, a panel of physicians (Panel I) evaluated Nelson's condition. Panel I found that Nelson's medical condition was unstable and recommended further treatment.

Following the Panel I review, Nelson's treating physician again released Nelson to work and recommended that Nelson return to employment, noting that x-rays showed that the bone was solidly mended and that Nelson should continue to be as active as possible.

On September 12 and 21, 1990, another physician practicing in industrial medicine examined Nelson. This doctor reported that Nelson should be "limited to light activity." He subsequently gave Nelson a permanent physical impairment rating amounting to twenty-five percent of the whole person and noted that Nelson's "pain is 10%."

On September 25, 1990, a second medical panel (Panel II) examined Nelson. Panel II concluded that Nelson's medical condition was fixed and stationary. Panel II gave Nelson a permanent physical impairment rating of eighteen percent as compared to amputation at the hip and noted that Nelson was able to return to gainful employment, although he had limitations of motion in the ankle and was probably not able to be on his feet a full eight-hour day.

Nelson filed an application for a hearing before the Commission to determine: (1) the extent of his permanent physical impairment; (2) the extent of his disability beyond impairment, including whether he is totally and permanently disabled by reason of being odd-lot; and (3) his entitlement to attorney fees under I.C. § 72–804. Following a hearing on April 16, 1991, the employer requested an extension of time to take post-hearing depositions. On June 6, 1991, the employer took the deposition of the Commission's field consultant. On June 12, 1991, the employer took the deposition of the employer's vocational counselor.

The Commission found that Nelson has a permanent physical impairment rating of eighteen percent and permanent partial disability, beyond and in addition to his permanent physical impairment, amounting to ten percent of the whole person. Nelson appealed.

## II.

### THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S FINDINGS THAT NELSON DID NOT ESTABLISH A PRIMA FACIE ODD–LOT CASE.

Nelson asserts that he established a prima facie case that he was an odd-lot worker. We conclude that there is substantial

and competent evidence to support the Commission's findings that he did not.

A claimant may establish a prima facie case of odd-lot status as a matter of law where "the evidence is undisputed and is reasonably susceptible to only one interpretation." *Lyons v. Industrial Special Indem. Fund,* 98 Idaho 403, 407 n. 2, 565 P.2d 1360, 1364 n. 2 (1977). In this case, the evidence relating to Nelson's employability is in dispute, foreclosing an award of odd-lot status as a matter of law.

■ Whether Nelson established a prima facie case that he was an odd-lot worker is a factual question for the Commission to answer. The Commission's findings on this issue will be sustained if supported by substantial and competent evidence. *Huerta v. School Dist. No. 431,* 116 Idaho 43, 47, 773 P.2d 1130, 1134 (1989).

■ To qualify for total disability under the odd-lot doctrine, an employee must prove the unavailability of suitable work. *Dumaw v. J.L. Norton Logging,* 118 Idaho 150, 153, 795 P.2d 312, 315 (1990). The employee may prove a prima facie case of odd-lot status by one of three methods:

(1) by showing what other types of employment the employee has attempted, (2) by showing that the employee, or vocational counselors, employment agencies, or the Job Service on behalf of the employee, have searched for other work for the employee, and that other work was not available, or (3) any efforts of the employee to find suitable employment would have been futile.

*Id.*

In this case, the Commission found that Nelson did not carry his burden under any of these three methods.

■ To establish a prima facie case by the first method, an employee must do more than merely assert that the employee cannot perform the employee's previous type of employment. *Huerta,* 116 Idaho at 48, 773 P.2d at 1135. In this case, Nelson testified that he made four attempts to return to work. None of the attempts were successful. The Commission found that each of Nelson's attempts involved heavy use of his injured leg and that at least two of the attempts preceded Panel II's exam and subsequent release of Nelson to return to work. The Commission found that Nelson had not proved whether the other two attempts were after Panel II released him to return to work.

I.C. § 72–422 provides, in part:

"Permanent impairment" is any anatomic or functional abnormality or loss *after maximal medical rehabilitation has been achieved* and which abnormality or loss, medically, *is considered stable or nonprogressive at the time of evaluation.*

(Emphasis added.) This contemplates that a claimant's condition must be stabilized before evaluation of permanent impairment.

There is substantial and competent evidence to support the Commission's finding that Nelson did not establish a prima facie odd-lot case under the first method.

■ In an attempt to establish a prima facie case by the second and third methods, Nelson offered the testimony of a vocational consultant. The Commission found that this testimony was not sufficient to establish that other work was not available or that efforts to find suitable work would have been futile. The Commission found that the consultant had little experience and made erroneous assumptions in giving an opinion. The Commission also found that the consultant's analysis was flawed. The opinions of an expert are not binding on the Commission, but are advisory. *Graves v. American Smelting & Refining Company,* 87 Idaho 451, 455, 394 P.2d 290, 293 (1964). The Commission was within its authority to reject the testimony of Nelson's vocational consultant.

There is substantial and competent evidence to support the Commission's findings that Nelson did not establish a prima facie odd-lot case by either the second or third method.

In light of our conclusion upholding the Commission's findings that Nelson did not establish a prima facie case of odd-lot status, it is unnecessary for us to address another issue raised by Nelson. Nelson asserts that the Commission should not have considered deposition testimony of the employer's voca-

tional witness. Because the Commission rejected the testimony of Nelson's vocational consultant, it is irrelevant whether the Commission should have considered the deposition of the employer's vocational witness, which was taken after the hearing. In *Huerta*, the Court pointed out that until the employee proves a prima facie odd-lot case, the burden to prove employability does not shift to the employer. 116 Idaho at 47, 773 P.2d at 1134.

### III.

### THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S RATING OF PERMANENT PARTIAL IMPAIRMENT.

Nelson asserts that the Commission should have given him a higher rating of permanent partial impairment. We conclude that there is substantial and competent evidence to support the Commission's rating.

I.C. § 72–424 provides for a "permanent impairment evaluation" as follows:

> "Evaluation (rating) of permanent impairment" is a medical appraisal of the nature and extent of *the injury* or disease as it affects an injured employee's personal efficiency in the activities of daily living, such as self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized activities of bodily members.

(Emphasis added.)

When formulating an impairment rating, I.C. § 72–424 requires an appraisal of the industrial injury only. The Commission noted that the rating of twenty-five percent made by Nelson's medical witness was based on flawed factual premises. Nelson's doctor testified that he was taking Nelson's dermatitis and low back sprain into account, yet neither of these conditions were shown to be work-related to a reasonable medical probability.

The Commission adopted Panel II's impairment rating of eighteen percent. The Commission is not required to accept the opinion of Nelson's physician regarding im-

pairment. *See Urry v. Walker & Fox Masonry Contractors*, 115 Idaho 750, 756, 769 P.2d 1122, 1128 (1989). It is the Commission, not this Court, which is to weigh the evidence. Where there is conflicting medical expert testimony, the Court may defer to the Commission's findings as to credibility. *Pomerinke v. Excel Trucking Transport*, 124 Idaho 301, 306, 859 P.2d 337, 341 (1993).

Nelson also challenges Panel II's rating because of its misuse of the "AMA Guides." Panel II's report stated that the impairment rating the panel made was in accordance with the tables in the "Second Edition of the Journal of the American Medical Association." This reference may have been intended to refer to the AMA's Guides to Evaluation of Permanent Impairment (2d ed.). The record on appeal does not contain copies of these "AMA Guides," and we will therefore not consider them.

There is substantial and competent evidence to support the Commission's rating of Nelson's permanent partial impairment.

### IV.

### CONCLUSION.

We affirm the Commission's order denying Nelson odd-lot status and determining his permanent partial impairment.

We award costs on appeal to the employer.

McDEVITT, C.J., and BISTLINE, TROUT and SILAK, JJ., concur.