879 P.2d 1085

Duane J. RAGAN, Claimant–Appellant,

v.

KENASTON CORPORATION, employer, and Argonaut Northwest Insurance Company, surety, Respondents.

No. 20465.

Supreme Court of Idaho, Lewiston, April 1994 Term.

Aug. 17, 1994.

Danny J. Radakovich, Lewiston, for appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondents. Glenna M. Christensen argued.

McDEVITT, Chief Justice.

## I

### BACKGROUND AND PROCEDURE

Ragan was a temporary construction worker, hired out of his union hall by Kenaston Corporation (Kenaston). The base wage of a worker hired out of Ragan's union hall was $13.72 per-hour. On smaller contracts, those costing less than twenty million dollars, employers were granted a twenty percent discount, resulting in a wage of $10.98 per-hour. The job for which Kenaston hired Ragan was· one of the smaller jobs, and Ragan was earn-

ing $10.98 per-hour while employed by Kenaston.

On his second day working for Kenaston, July 3, 1984, Ragan was carrying one end of a concrete slab when the workers carrying the other end of the slab dropped their end, jostling Ragan. Ragan felt a sharp tearing through his back and legs. Although Ragan finished work that day, he did not return to work after that day. Following the accident, Ragan complained of constant pain and stiffness in his neck, with a limited ability to move his head. Ragan also testified that he suffered a number of other physical symptoms, as well as some degree of mental disability that was exacerbated by the accident. At the compensation hearing, Ragan testified that, although he had some degree of trouble concentrating before the accident, the problem is "very much ·worse now than then."

Ragan received worker's compensation benefits from Kenaston following the accident. Later, Ragan filed an application for hearing, seeking an increase in his total temporary disability benefits and an award of total permanent disability benefits under the odd-lot doctrine. Ragan claimed that his temporary benefits should reflect the base wage paid to workers hired out of the union hall, rather than the wage actually paid by Kenaston, and that the combination of his mental and physical disabilities rendered him totally and permanently unemployable under the odd-lot doctrine.

At a hearing before an Industrial Commission (Commission) referee, Ragan submitted a deposition by Dr. Harold W. James (James), the rehabilitation director at Open Door, Inc., a rehabilitation facility for severely disabled people. James stated that, because of the limitation on Ragan's lifting abilities, his previous job skills are not transferable to alternative employment. Furthermore, if Ragan's psychological problems are included, none of his previous job skills are transferable. James opined that there was no suitable employment in either the national or local economies which would be reasonably available to Ragan. In a correction sheet attached to the deposition, James stated that he relied entirely on statements from Ragan to determine Ragan's physical condi-

tion, and he was supplied no medical reports or other information with which to verify or contradict those statements.

Kenaston submitted the deposition of Tim Egbert (Egbert). Egbert was the rehabilitation field consultant for the Commission assigned to Ragan's case. Egbert concluded that, due to Ragan's mental and physical limitations, Ragan would not be able to return to general construction work. While attempting to plan a retraining program for Ragan, Egbert noted that Ragan expressed interest in small appliance and small engine repair. After Egbert attempted to arrange a training program in that field, Ragan informed Egbert that he did not feel capable of working, and that he had received Social Security disability benefits and no longer wished to participate in the program.

After the hearing and submission of depositions, the referee issued findings of fact, conclusions of law, and a proposed order. The referee concluded that Ragan met his burden of proving that the injury to his right shoulder was causally related to the accident that took place on July 3, 1984. The referee rejected Ragan's contention that total temporary disability benefits should be calculated based on an hourly wage of $13.72, and computed Ragan's income benefits at $10.98 per hour, the wage he was actually paid while working for Kenaston. Finding that the medical panel's evaluation of Ragan's permanent disability was more credible than the evidence submitted by Ragan, the referee concluded that Ragan's permanent physical impairment was five percent of the whole person for the lower back condition, and three percent of the whole person for the injury to Ragan's right shoulder. The referee also concluded that Ragan failed to establish that he is an odd-lot worker, or a worker rendered unemployable in any well known branch of the labor market.

The Commission adopted the referee's findings and conclusions, and issued an order awarding Ragan total temporary and partial permanent disability benefits at the rate proposed by the referee. Ragan appeals that determination, claiming that the Commission erred in determining the wage to be used when computing Ragan's total temporary

disability benefits, and that the Commission's finding that Ragan is not an odd-lot worker is not supported by substantial and competent evidence.

## II

## THE COMMISSION APPLIED THE CORRECT RATE OF PAY WHEN DETERMINING RAGAN'S TEMPORARY DISABILITY BENEFITS

■ Ragan asserts on appeal that his employment with Kenaston was not seasonal, and the method for calculating "exclusively seasonal" employment, provided by I.C. § 72–419(6) should not be applied in this case. The question of whether Ragan's employment was seasonal is not in dispute. The Commission did not conclude that Ragan's work was seasonal, Ragan's award was not based on a seasonal wage, and Kenaston does not argue on appeal that the seasonal formula should be applied. This appeal presents no basis for this Court to consider the seasonality of Ragan's employment.

Ragan does not dispute that he was paid $10.98 per hour during his brief tenure with Kenaston. Ragan asserts that the proper wage from which his temporary disability benefits should be calculated is the wage normally paid to workers hired out of the union hall. This argument is based on I.C. § 72–419(10), which provides that "contractual, customary, or usual wage in the particular employment, industry or community for the same or similar service" can be used to determine the appropriate hourly rate when "the actual rate of pay cannot be readily ascertained." I.C. § 72–419(10). In this case, however, there is no question that Ragan's actual rate of pay while working for Kenaston was $10.98 per-hour. The formula for determining the employee's average weekly pay when wages are fixed by the hour is provided in I.C. § 72–419(4). That section provides that, when the employee has been employed by the employer for less than twelve weeks preceding the accident, the average weekly wage should be computed by determining what the employee would have earned had he or she worked for that employer for thirteen calendar weeks before the

accident, when such work was available to other employees in a similar occupation, excluding overtime or premium pay. I.C. § 72–419(4)(b).

There is no dispute that Ragan's wages were fixed by the hour. Ragan had been employed by Kenaston less than twelve calendar weeks, requiring that his rate of pay be computed by projecting the wages he was paid during the two days he worked for Kenaston, excluding overtime or premium pay, over the thirteen week period preceding the accident. This statute presents no basis from which either the Commission or this Court could base Ragan's benefits on any wage other than the hourly wage he was being paid during the period he was employed by Kenaston.

Ragan asserts that, because the normal wage for employees hired out of the union hall was $13.72 per-hour, the wage paid by Kenaston is not an appropriate basis for determining what he would have earned but for his disability. I.C. § 72–419(4)(b) requires that the employees benefits be computed according to the wages that employee would have earned "had he been so employed *by the employer* the full thirteen (13) calendar weeks immediately preceding such time." The Commission properly computed Ragan's benefits on the basis of what Ragan's wages would have been had he been similarly employed by the employer, Kenaston, for the relevant period preceding the accident.

The Commission properly rejected the contention that Ragan should be compensated based on what Ragan might have earned had he been hired by a different employer to work on a different project during the period he was temporarily disabled. Such an award would be based on speculation, and is unsupported by law. In *McClurg v. Yanke Mach. Shop,* 123 Idaho 174, 845 P.2d 1207 (1993), and, more recently, in *Reiher v. American Fine Foods,* 126 Idaho 58, 878 P.2d 757 (1994), this Court held that "the Commission may not consider such [wage] increases where they are speculative and unsupported by law. Such increases are speculative and unsupported by law unless the claimant is performing the act being used as the test

pre-injury and post-injury." *Reiher,* 126 Idaho at 61, 878 P.2d at 760.

The Commission properly rejected Ragan's assertion that his benefits should be based on alternative employment he may have obtained during the period of his disability, and determined his total temporary disability benefits in the manner prescribed by I.C. § 72–419(4). The Commission's award of total temporary disability benefits is therefore affirmed.

## III

### SUBSTANTIAL AND COMPETENT EVIDENCE SUPPORTS THE COMMISSION'S CONCLUSION THAT RAGAN IS NOT AN ODD–LOT WORKER

 Ragan claims that he should receive total permanent disability benefits because he fits within the odd-lot category. An odd-lot worker is one who, as a result of the injury, is impaired to an extent that his or her ability to perform services is so limited in quality, quantity, or dependability that *no* reasonable market for his or her services exists. *Hegel v. Kuhlman Bros., Inc.,* 115 Idaho 855, 771 P.2d 519 (1989); *Gordon v. West,* 103 Idaho 100, 645 P.2d 334 (1982). The burden rests with the claimant to establish that he or she fits within the odd lot category. *Huerta v. School Dist. No. 431,* 116 Idaho 43, 47, 773 P.2d 1130, 1134 (1989). Because the Commission was presented with conflicting evidence subject to more than one interpretation as to the extent of Ragan's disability, odd-lot status is a question of fact that this court will review to determine if it is supported by substantial and competent evidence. *Nelson v. David L. Hill Logging,* 124 Idaho 855, 857, 865 P.2d 946, 948 (1993).

 This Court has held that an employee may prove odd-lot status in one of three ways. The employee can (1) show what other types of employment he or she has attempted; (2) show that he or she, or a vocational assistant on his or her behalf, has sought work, and discovered that no other work is available; or (3) establish that any efforts to obtain employment would be futile. *Nelson,* 124 Idaho at 857, 865 P.2d at 948; *Pomerinke v. Excel Trucking Transp., Inc.,*

**156**

124 Idaho 301, 306, 859 P.2d 337, 342 (1993). The Commission found that Ragan did not establish that he is an odd-lot worker under any of the three methods. Because the record presents substantial and competent evidence to support the Commission's findings, we affirm the Commission's order denying Ragan's claim for permanent total disability benefits.

Ragan has not established that he has unsuccessfully attempted to return to work. Ragan testified that, other than the position he successfully obtained with St. Vincent de Paul, he had not attempted any employment after the accident. The deposition testimony of Mr. Egbert indicates that Ragan did not seek employment after he was awarded social security disability benefits, and rejected an opportunity to take part in an on the job training program. Similarly, Ragan did not show that either he or his vocational counselor sought work on behalf of Ragan. The only vocational counselor who attempted to locate work for Ragan was Egbert, who terminated his search when Ragan indicated that he did not intend to return to work after being awarded social security benefits. Ragan also testified that he had not applied for any jobs other than the job he obtained with Saint Vincent de Paul since the accident.

Ragan argues that the reason he did not seek employment was because such efforts would be futile. The Commission rejected this claim, finding that "[a]t least some of Claimant's alleged disability is attributable to his own lack of interest in returning to the work place, as evidenced by the fact that he rejected job training once he learned he would be receiving Social Security disability benefits." Despite this finding, Ragan asserts that the Commission improperly rejected the opinion of his expert, who testified that there is no job regularly available in the national economy that would be regularly available to a person with Ragan's limitations. As this Court noted in *Nelson,* "[t]he opinions of an expert are not binding on the Commission, but are advisory." 124 Idaho at 857, 865 P.2d at 948.

The weight to be given the facts presented and the conclusions to be drawn from those facts are within the province of the Commis-sion. Substantial and competent evidence supports the Commission's findings that Ragan did not establish a prima facie case that he was an odd-lot worker. The Commission's order denying total permanent disability benefits is therefore affirmed.

## IV

## CONCLUSION

The Commission's order determining Ragan's total temporary disability benefits and denying total permanent disability benefits on the basis of odd-lot status is affirmed. We award costs on appeal to Kenaston.

BISTLINE, JOHNSON, TROUT and SILAK, JJ., concur.