887 P.2d 1067

Olaf LETHRUD, Claimant–Appellant,

v.

STATE OF IDAHO, INDUSTRIAL SPECIAL INDEMNITY FUND, Defendant–Respondent.

No. 20721.

Supreme Court of Idaho, Coeur d'Alene, October 1994 Term.

Jan. 6, 1995.

Steven C. Verby, Sandpoint, for appellant.

Larry Echohawk, Atty. Gen., Quane, Smith, Howard & Hull, Coeur d'Alene, for respondent. Carol B. Groover argued.

McDEVITT, Chief Justice.

Olaf Lethrud (Lethrud) appeals the order of the Idaho Industrial Commission (Commission) denying Lethrud's claim for worker compensation benefits from the Idaho Industrial Special Indemnity Fund (I.S.I.F.). Lethrud argues that the Commission erred when it concluded that Lethrud failed to prove that he suffers total and permanent disability under the odd-lot doctrine as a result of his accident and injury of October 1985. Lethrud also argues that the Commission erred when it concluded that Lethrud failed to prove that he had a preexisting permanent physical impairment so as to render the I.S.I.F. liable for workers' compensation benefits. Lethrud contends that whether a preexisting condition exists should be determined at the time the claimant is unable to continue working, rather than at the time of injury.

## I.

## BACKGROUND

Lethrud is a sixty-two year old man residing in Bonners Ferry, Idaho. Lethrud is a high school graduate. He has training as a military policeman and has been employed at a variety of jobs at lumber mills.

In May 1985, Lethrud was hired by W–I Forest Products, Inc. (W–I) in Bonners Ferry, Idaho. On October 21, 1985, Lethrud was repairing a tail saw when he slipped and fell into the tail saw pit and caught his right wrist on the teeth of the saw blade. Lethrud also injured his knee in the fall.

Lethrud sought medical treatment for his injuries from Dr. William H. Slaughter, an orthopedic surgeon. Dr. Slaughter x-rayed Lethrud's wrist and knee and determined that Lethrud suffered "an avulsion fracture of the ulnar styloid and a medial collateral strain of the right knee." Lethrud was then treated by Dr. P.J. Kavanagh, a general practitioner from British Columbia, who placed Lethrud's right wrist in a cast. After the cast was removed, Lethrud returned to

work at W–I stacking lumber. Lethrud's position was eliminated in November of 1988, and Lethrud was reassigned to a tail saw position at the sawmill. Lethrud testified at the hearing before the Commission that he had difficulty with the heavy lifting aspects of the tail saw job.

Lethrud's wrist pain continued, so he went to Dr. James F. Brinkman in Spokane, Washington. Dr. Brinkman examined Lethrud and suggested the possibility of surgery in the future. The next year, in 1988, Lethrud was reevaluated by Dr. Brinkman who recommended surgery be performed. A surgical procedure described as an ulna resection with a tendon transfer was performed on Lethrud's wrist in June 1989. Four months after the surgery, Dr. Brinkman released Lethrud to return to work at W–I, but stated that Lethrud could not perform the heavy work of his prior job. In December 1989, Lethrud was still suffering from pain in his joints, knee, and right foot, so he sought medical treatment from Dr. J.R. Hill, Lethrud's family physician. Dr. Hill found that Lethrud had moderately severe degenerative arthritis and concluded that the arthritis condition combined with Lethrud's wrist injury would make it unlikely that Lethrud could return to work in the logging industry. In January 1990, Lethrud visited Dr. Craig W. Wiesenhutter, a rheumatologist from Coeur d'Alene, who found spur formations in Lethrud's elbow and shoulder due to arthritis and advanced degenerative changes in Lethrud's right thumb and wrist. Like Dr. Hill, Dr. Wiesenhutter concluded that, due to the extent of Lethrud's arthritis and the damage from Lethrud's injuries, Lethrud was unable to work in the lumber mill.

In January 1990, a medical panel, consisting of Dr. J.B. Watkins and Dr. R.A. Wetzlar, examined Lethrud and concluded that Lethrud suffered from degenerative arthritis in his right thumb, wrist, elbow, and shoulder. The panel concluded that Lethrud's medical condition was stationary and that Lethrud could return to work. The panel rated the disability in Lethrud's right hand at ten percent (10%) disability as compared to the loss of the right hand at the wrist. In March and April of 1990, Dr. Brinkman re-

examined Lethrud and concluded that Lethrud's previous work load exceeded his capacity. Dr. Brinkman stated that Lethrud could not lift more than ten (10) pounds without pain and that Lethrud should be limited to light duty jobs, such as desk jobs or telephone answering positions. In June of 1990 a second medical panel consisting of Dr. R.D. Luther and Dr. R.A. Wetzlar, examined Lethrud and found that Lethrud's condition had worsened. The panel concluded that Lethrud's right leg had a permanent physical impairment of two percent (2%) as compared to the amputation of the right leg at the knee joint and an increase in impairment of Lethrud's right wrist to fifteen percent (15%) as compared to the amputation of the hand at the wrist. The combined impairment of the leg and wrist translated to a permanent disability rating of ten percent (10%) of the whole person.

In 1992, the Objective Medical Assessments Corporation (O.M.A.C.) evaluated Lethrud and agreed with the medical panel's June 1990 evaluation. O.M.A.C. believed that Lethrud's injury was stable and fixed but felt that Lethrud could not return to his prior positions at the mill. O.M.A.C. concluded that if Lethrud were employed, the position would have to be at a light-duty job that would allow him to sit or stand at will with no lifting over five (5) pounds.

## II.

### PRIOR PROCEEDINGS

On March 12, 1990 W–I terminated Lethrud because he did not return to work after Dr. Brinkman released Lethrud to return to work. Lethrud testified that he was unable to return to work because he could not use his hands and arms, and could not lift heavy things. Lethrud has not worked since that time.

On January 22, 1991, Lethrud filed an application for a hearing seeking disability benefits, including total permanent disability benefits, partial permanent disability benefits, and total temporary disability benefits, from W–I and W–I's surety, Wausau Insurance Company. On September 30, 1991, the I.S.I.F. was joined in the action. Shortly before the scheduled hearing, a settlement agreement was entered into between Lethrud, W–I and Wausau Insurance. The case proceeded to hearing solely against I.S.I.F. The case was heard before the Industrial Commission on September 30, 1992, with Commissioner Betty H. Richardson and former Commissioner Logan E. Lanham, presiding. At the hearing Lethrud argued that he is entitled to benefits from I.S.I.F. because he is totally and permanently disabled under the odd-lot doctrine and that he has a preexisting permanent physical impairment as a result of his accident and injury of October 1985. At the hearing Lethrud testified to his physical limitations. Lethrud stated that he experiences pain in his right knee, shoulder, elbow, and wrist, which affects his ability to walk, stand, and lift heavy objects. Lethrud's wife and son testified to Lethrud's physical limitations performing tasks requiring fine dexterity, such as wiring a light fixture and mounting a scope on a rifle.

At the hearing, two vocational rehabilitation counselors, Daniel R. McKinney (McKinney) and Steve Hamman (Hamman), testified to occupational possibilities available to Lethrud within the Bonners Ferry/Sandpoint, Idaho geographical region. McKinney's evaluation consisted of conducting a labor market survey of a sample position which Lethrud could perform and a vocational evaluation of the region. After identifying viable occupational possibilities for Lethrud in his current condition, McKinney concluded that Lethrud was unemployable in his geographic area.

Hamman also conducted a vocational evaluation on Lethrud. He reviewed Lethrud's medical records, interviewed several of Lethrud's co-workers, and compared Lethrud's work history and transferable skills to the available jobs which Lethrud could perform in the Bonners Ferry region. Hamman found that Lethrud was limited to unskilled sedentary work that comprised, in his opinion, .14% of the entire labor market in the Bonners Ferry/Sandpoint area. Hamman concluded that Lethrud was not employable in his geographical locale.

The Commissioners in the Findings of Fact, Conclusions of Law, and Proposed Order determined that Lethrud did not establish that he falls within the odd-lot category of disability. The Commissioners also found that Lethrud was not entitled to benefits because he failed to prove he suffered from a preexisting permanent physical impairment. The Commissioners found that the preexisting arthritis suffered by Lethrud prior to the October 1985 injury, did not rise to the level of constituting a manifest and known hinderance or obstacle to Lethrud's obtaining any employment or reemployment.

The Commission adopted the recommended Findings of Fact, Conclusions of Law, and Proposed Order of Commissioner Richardson and denied Lethrud's claim against the I.S.I.F.

## III.

### THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S FINDINGS THAT LETHRUD DID NOT ESTABLISH A PRIMA FACIE CASE OF ODD-LOT DISABILITY.

■ Lethrud asserts that he has established a prima facie case that he is totally and permanently disabled and is in the odd-lot category of disability. A claimant may establish a prima facie case of odd-lot disability as a matter of law " 'where the evidence is undisputed and is reasonably susceptible to only one interpretation.' " *Nelson v. David L. Hill Logging,* 124 Idaho 855, 857, 865 P.2d 946, 948 (1993) (quoting *Lyons v. Industrial Special Indemnity Fund,* 98 Idaho 403, 407 n. 2, 565 P.2d 1360, 1364 n. 2 (1977)). Here, a dispute exists as to the extent of Lethrud's disability, the type of work he is capable of performing, and the efforts made by Lethrud and the vocational counselors to find suitable employment for Lethrud. Therefore, whether Lethrud is within the odd-lot category is a factual determination within the discretion of the Commission.

■ The decision of the Commission will be sustained by this Court if the Commission's findings are supported by substantial and competent evidence. *Ragan v. Kenaston*

*Corp.,* 126 Idaho 152, 155, 879 P.2d 1085, 1088, (1994). The burden of proving a prima facie case of odd-lot status is on Lethrud. *Weygint v. J.R. Simplot Co.,* 123 Idaho 200, 202, 846 P.2d 202, 204 (1993) (citing *Huerta v. School Dist. No. 431,* 116 Idaho 43, 47, 773 P.2d 1130, 1134 (1989)). We will not disturb on appeal the Commission's conclusions on the weight and credibility of the evidence unless they are clearly erroneous. *Reiher v. American Fine Foods,* 126 Idaho 58, 61, 126 Idaho 58, 61, 878 P.2d 757, 760 (1994); *Darner v. Southeast Idaho In-Home Serv.,* 122 Idaho 897, 900–01, 841 P.2d 427, 430–31 (1992). Upon review of the Commission's decision, this Court must view the facts and inferences of the Commission in the light most favorable to the party who prevailed before the Commission. *Dumaw v. J.L. Norton Logging,* 118 Idaho 150, 155, 795 P.2d 312, 317 (1990).

■ "An odd-lot worker is one who, as a result of the injury, is impaired to an extent that his or her ability to perform services is so limited in quality, quantity, or dependability that no reasonable market for his or her services exists." *Ragan,* 126 Idaho at 155, 879 P.2d at 1088, (citing *Hegel v. Kuhlman Bros., Inc.,* 115 Idaho 855, 771 P.2d 519 (1989)). A claimant can satisfy his or her burden and establish odd-lot disability status in one of three ways:

(1) by showing that claimant has attempted other types of employment without success;

(2) by showing that claimant or vocational counselors or employment agencies on his or her behalf have searched for other work and other work is not available; or;

(3) by showing that any efforts to find suitable employment would be futile.

*Ragan,* 126 Idaho at 155, 879 P.2d at 1088. The Commission found that Lethrud failed to establish odd-lot disability under any of the three methods.

■ After hearing the testimony and a thorough review of the record, the Commission found that Lethrud had not attempted any work or applied for employment since his termination from employment at W–I. The

Commission found that the efforts expended by the vocational consultants were minimal at best and that their testimony concerning their efforts to locate employment for Lethrud was vague. The Commission stated that the counselors did not approach the task of finding employment for Lethrud with any definite motivation. The Commission also noted that Lethrud stated that he did not believe the vocational counselors were attempting to find him specific employment.

The Commission found that the evidence did not establish that the efforts of Lethrud and others on his behalf to find employment would be futile. The Commission found that Lethrud does have a significant disability, but with his experience, education, training and physical abilities, he is employable. Based on the findings above, the Commission concluded that Lethrud failed to sustain his burden of proving that he suffers total and permanent disability as a result of his accident and injury of October 1985.

We hold that substantial and competent evidence supports the Industrial Commission's findings that Lethrud failed to establish that he suffers total and permanent disability to fall within the odd-lot classification of disability. The record supports the Commission's conclusion that Lethrud did not attempt any other types of employment and that efforts to find reemployment for Lethrud would not be futile. There is also substantial and competent evidence to support the Commissioners' determination that little weight should be given the vocational counselors' conclusions that Lethrud is unemployable in his geographic region. The record supports the Commission's determination that the testimony of the counselors was vague and that their efforts to find employment for Lethrud were unmotivated and minimal at best. We affirm the Commission's denial of Lethrud's claim for total permanent disability benefits. Because we hold that sufficient evidence supports the Commission's finding of no total permanent disability, we need not resolve the issue of whether Lethrud suffered from a preexisting permanent physical impairment.

## IV.

## CONCLUSION

We affirm the Commission's determination that Lethrud failed to establish prima facie that he is totally and permanently disabled under the odd-lot doctrine so as to render the I.S.I.F. liable for workers' compensation benefits. Costs are awarded to respondent.

JOHNSON, TROUT, and SILAK, JJ., and LEGGETT, J. Pro Tem, concur.