918 P.2d 1192

Dale Harris **SEAMANS**, Claimant–Respondent,

v.

**MAACO AUTO PAINTING & BODY-WORKS**, Employer, and Argonaut Northwest Insurance Company, Surety, Defendants–Appellants.

No. 21485.

Supreme Court of Idaho, Boise, November 1995 Term.

May 23, 1996.

Rehearing Denied July 22, 1996.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, for appellants. John W. Barrett argued.

Bradford S. Eidam, Boise, for respondent.

SILAK, Justice.

This is an appeal from an Industrial Commission (Commission) decision in a worker's compensation case. The Respondent Dale Harris Seamans (Seamans) seeks compensation for injuries he allegedly sustained in the course of his employment with Appellant Maaco Auto Painting & Bodyworks (Maaco) caused by falling from Maaco's roof. Although the Commission found that it could not determine whether Seamans' fall was accidental or intentional, it found that Seamans had proven a compensable accident. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Seamans worked for Maaco from 1978 to 1991. On June 7, 1991, in the course of his employment with Maaco, Seamans suffered an undisplaced right pelvic fracture and right foot injuries after falling from Maaco's roof. At the time of his injury, Seamans was a manager at Maaco.

On the day of the injury, Seamans told the owner that he had come in early to clean the ventilation stack.[1] Seamans asked a co-

---

1. The stack is an outlet from the paint booth to the roof which allows fumes to exit the building.

It is about four feet in diameter and about six feet high. It can be accessed from both the paint

worker, Steve Kraus, to help him. They first cleaned the lower portion accessible from the paint booth and then the roof portion. During the latter process, Seamans returned to the ground. When Kraus believed the project was complete, he called Seamans back up to inspect the stack. They finished scraping and Seamans went around the stack to retrieve the remaining tools. Kraus was in the process of tightening the screws when he stood up and noticed that Seamans was rolling down the roof. Kraus thought the fall was intentional because he did not hear Seamans fall and because Seamans did not cry out for help or put his arms or legs out to stop himself. Seamans fell about 15 feet to the ground below.

**Seamans' Pre–Fall State of Mind.** For about two to three weeks before the fall, Seamans had daily conversations with a co-worker, Tim Cronin, in which he conveyed his belief that Seamans' wife was having an affair with a neighbor and that she would take the children and leave him.

Seamans also exhibited what others perceived as paranoid-type behavior during the two to three weeks prior to the fall. Although the owner of Maaco reported that Seamans was functioning effectively at work before the fall, Tim Cronin stated Seamans appeared sad and upset, was short-tempered, and his hands trembled, throughout the two weeks preceding the fall.

**Seamans' Post–Fall State of Mind.** Seamans was taken to the emergency room by paramedics and was combative and belligerent on the way to the hospital. He remained in the hospital overnight. During the next week, Seamans accused his wife of poisoning his sandwich, and for the first time, accused her of having an affair with his boss, Maaco's owner. On June 17, 1991, Seamans returned to work on crutches, but stopped working after about two hours because he felt depressed, began thinking about his boss and his wife all the time and felt his boss did not want him back. He went home and never returned to work.

Seamans' condition continued to deteriorate. In July 1991, Seamans was taken to Intermountain Hospital by his brother where he remained for five days. He was diagnosed as having major depression with early psychotic features and suicidal ideation. Soon thereafter, Seamans tried to strangle his wife. For the next two weeks Seamans did not shave or bathe. He then underwent voluntary treatment at the New Hope Center Hospital. His wife reported a major personality change since the fall.

In August 1991, Seamans was readmitted to Intermountain Hospital where he came under the care of Dr. Michael Estess, and remained hospitalized for two weeks. Dr. Estess obtained information regarding Seamans' employment from others who had dealt with him since the fall and concluded that Seamans' psychological problems very likely stemmed from his occupation as a painter. Dr. Estess noted that Seamans had a strong family history for psychiatric illness and surmised that he may have been depressed or had some paranoid ideation before the fall.

The day after Seamans was discharged from Intermountain Hospital, he attempted suicide by overdose from his prescription medications. He survived, but developed Adult Respiratory Distress Syndrome and was not released until two months later. Seamans' pulmonary status has generally returned to normal but he cannot return to painting. He has since been taken off anti-psychotic medication. At the time of the hearing before the Commission, Seamans was undergoing training as a truck driver but remained in a somewhat fragile psychological condition.

In September 1991, Seamans filed an application for hearing with the Commission against Maaco and Maaco's surety, Argonaut Northwest Insurance Company (collectively Maaco), claiming that he had been injured at work. He requested medical benefits, total temporary disability (TTD) benefits, and retraining and/or permanent partial disability (PPD) benefits. In its Answer, Maaco de-

---

booth and the roof. An access door is located on the south side of the lower portion of the stack. Paint from overspray in the booth accumulates in

the stack and can ignite spontaneously. Therefore, the stack requires scraping about twice a year.

nied that Seamans had suffered an accident and alleged that his actions were intentional in nature, thus barring relief under the Idaho worker's compensation law.

An evidentiary hearing was held in June 1993. Seamans sought an award for all his injuries, including those from his mental illness. He contended that any "oddities" he evidenced before the fall were due to his personality and were not symptoms of a developing illness such as would lead him to an intentional fall from the Maaco roof. He further contended that the fall, including subsequent "stressors" and a possible closed head injury, caused or accelerated his mental illness resulting eventually in his overdose.

The Commission issued its findings of fact, conclusions of law, and proposed order finding that it could not determine whether or not Seamans' fall from the roof was intentional. The Commission concluded that because the evidence was in equipoise, Maaco had not met its burden of proving by a preponderance of the evidence, as required by I.C. § 72–208, that Seamans' fall was proximately caused by his wilful intention to injure himself. The Commission further found that even if the fall was attributable in part to Seamans' illness, the direct injuries from Seamans' fall are compensable because it was an idiopathic fall. Maaco thereafter filed a motion for reconsideration which the Commission denied. Maaco appeals.

## II.

### ISSUES ON APPEAL

1. Whether the Commission erred by failing to consider unrefuted evidence of Seamans' state of mind prior to his injury.
2. Whether substantial and competent evidence exists in the record to support the Commission's finding that Seamans suffered an accident, notwithstanding the finding that the evidence was in equipoise with regard to the issue of whether Seamans' injuries were proximately caused by his willful intent to injure himself.
3. Whether substantial and competent evidence exists in the record to support the Commission's finding that Seamans suf-

fered an idiopathic fall, notwithstanding the finding that the evidence was in equipoise with regard to the issue of whether Seamans' injuries were proximately caused by his willful intent to injure himself.
4. Whether Seamans is entitled to an award of attorney fees and costs incurred in this appeal pursuant to I.C. § 72–804.

## III.

### ANALYSIS

**A. The Commission Did Not Fail to Consider Unrefuted Evidence of Seamans' State of Mind.**

█ Maaco argues that unrefuted evidence was presented that Seamans suffered from a delusion that his wife was having an affair with his boss for one year prior to his fall from the Maaco roof. Maaco further argues that the Commission failed to consider this unrefuted evidence; that the Commission's findings are insufficient as a result of such failure; that, as a result, the findings are not supported by substantial and competent evidence; and that had such unrefuted evidence been considered by the Commission, it would have been forced to conclude that Seamans fell from the roof with the wilful intent to injure himself. We disagree.

The "unrefuted" evidence relied upon by Maaco was that Seamans himself testified at his deposition that he believed his wife was having an affair prior to the fall. At the hearing before the Commission, he testified that the first time he had this thought was when he was in the hospital after the fall. He testified at the hearing that he lied during his deposition because, in essence, he did not want anyone to think he had been deceived by his wife and his boss prior to the fall. At the hearing he testified that his psychosis was affecting him during his deposition which made him lie. One of the expert doctors who testified, Dr. Beaver, was of the opinion that the reasons given by Seamans for recanting were reasonable.

Maaco also argues that the evidence is unrefuted that Seamans believed his wife was having an affair with his boss because co-

worker, Tim Cronin, testified that there was a drastic change in Seamans two to three weeks prior to the fall.

A review of the record shows that the Commission considered all of the evidence, including all of the witnesses' testimony, and including Seamans' deposition. However, the Commission is not required to make a specific finding with regard to every fact presented to it; a finding is necessary only for those facts which support the award and which enable meaningful appellate review. *Davaz v. Priest River Glass Co.*, 125 Idaho 333, 338, 870 P.2d 1292, 1297 (1994); *Swanson v. Kraft, Inc.*, 116 Idaho 315, 319, 775 P.2d 629, 633 (1989); *Madron v. Green Giant Co.*, 94 Idaho 747, 751, 497 P.2d 1048, 1052 (1972). Thus, the issue is whether there is substantial and competent evidence to support the finding of the Commission that Maaco failed to prove that Seamans fell from the roof with the wilful intent to injure himself, if indeed the statute obligated Maaco to sustain this burden. We hold that there is ample support in the record for this finding. Most of the statements made by Seamans regarding his belief that his wife was having an affair with his boss were made after the fall and when he was psychotic. Further, both Dr. Beaver and Dr. Estess offered opinions to support the Commission's finding that Seamans did not fall from the roof with the wilful intent to injure himself. It is the province of the Commission to decide what weight should be given to the facts presented and conclusions drawn from those facts. *Ragan v. Kenaston Corp.*, 126 Idaho 152, 156, 879 P.2d 1085, 1089 (1994). Thus, no additional findings are necessary to support this conclusion.

**B. Substantial and Competent Evidence Exists in the Record to Support the Commission's Finding That Seamans Suffered an Accident, Notwithstanding the Finding That the Evidence Was in Equipoise With Regard to the Issue of Whether Seamans' Injuries Were Proximately Caused by His Wilful Intent to Injure Himself.**

Maaco argues that Seamans did not meet his burden of proving that his fall was an accident, and that if Seamans did not meet this burden, then Maaco was not required to prove that Seamans' fall was intentional pursuant to I.C. § 72–208. We disagree.

I.C. § 72–102(15) defines "injury" and "accident" as follows:

(a) "Injury" means a personal injury caused by an accident arising out of and in the course of any employment covered by the workmen's compensation law.

(b) "Accident" means an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury.

In order for a claimant to recover worker's compensation benefits, the claimant must prove not only that he or she was injured, but also that the injury was the result of an accident arising out of and in the course of employment. *Neufeld v. Browning Ferris Indus.*, 109 Idaho 899, 902, 712 P.2d 600, 603 (1985); *Callantine v. Blue Ribbon Linen Supply*, 103 Idaho 734, 734–35, 653 P.2d 455, 455–56 (1982). Whether an accident arises out of and in the course of employment is a question of fact to be determined by the Commission in the context of each particular case, which finding shall not be overturned if it is supported by substantial and competent evidence. *Teffer v. Twin Falls Sch. Dist. No. 411*, 102 Idaho 439, 631 P.2d 610 (1981).

In the present case, there is substantial and competent evidence to support the Commission's finding that Seamans was injured as the result of an accident that arose in the course of his employment. It is undisputed that the fall occurred during the course of his employment: he was at his place of employment, Maaco, during business hours when he fell; he was on Maaco's roof at the time he fell; and he was on the roof retrieving tools after having cleaned the stack (which was a part of his duties) at the time he fell. We also hold that there is substantial and competent evidence in the record that the fall was accidental, *i.e.*, an unexpected, undesigned or untoward event, and that Seamans sustained

injuries as a result of the accident. Seamans has therefore carried his burden of proof that he is entitled to recover worker's compensation benefits.

■ Maaco argues, however, that the Commission misapplied I.C. § 72–208(1) by placing upon it, the employer, the burden of proving that Seamans wilfully intended to injure himself when he fell from the roof. Maaco raised the affirmative defense of wilful intent to injure in its answer, stating ["b]ased on information and belief, defendants deny an 'accident' and allege that the acts of claimant were intentional in nature, thus barring relief under the Idaho workers' compensation law." Although not cited specifically, the answer unequivocally raises the statutory bar of benefits due to intentional injury contained in I.C. § 72–208(1), which provides in pertinent part:

> (1) **Injuries not covered.—Wilful intention—Intoxication.**—No compensation shall be allowed to an employee for injury proximately caused by the employee's wilful intention to injure himself or to injure another.

Maaco concedes in its reply brief to this Court that it is not clear under Idaho law who has the burden of proof under this section. The plain language of the statutory section does not allocate the burden of proof. Accordingly, it is necessary to resort to principles of statutory construction to discern the intent of the legislature regarding the burden of proving the statutory bar.

Maaco argues that the history of I.C. § 72–208(1) favors its position, noting that before 1971, the predecessor statute of Idaho Code, Section 72–208 contained the following provision regarding the burden of proof: "If the employer claims an exemption or forfeiture under this section, the burden of proof shall be upon him." As noted by the Commission in this case in its "Order on Reconsideration," the 1971 amendments deleted this section, while expanding the sections relating to intoxication.

We do not find the argument convincing that the deletion of the burden of proof language means that the legislature intended the opposite result, that of placing the bur-

den of disproving wilful intent to injure himself or herself, or disproving intoxication, upon the claimant. Had the legislature intended such an allocation of the burden, it could have simply so stated. Rather, we agree with the Commission in its Order on Reconsideration that Section 72–208(1) is in the nature of an affirmative defense, which, if raised by the employer, must be proved by a preponderance of the evidence by the employer.

■ Such conclusion is consistent with sound principles of statutory construction. We are mindful of the principle that the workers' compensation statute is to be construed, when possible, to provide swift and sure relief to the worker. *Haldiman v. American Fine Foods,* 117 Idaho 955, 793 P.2d 187 (1990). Further, we must give the statute a reasonable construction and one that does not deprive it of meaning. To agree with Maaco that Section 72–208(1) is merely a subcomponent of the issue of "an unexpected, undesigned, and unlooked for mishap," or "accident" would be to make Section 72–208(1) redundant and to read it out of the workers' compensation statute as a separate section.

To give the statute a reasonable construction requires that "wilful intention to injure himself" be deemed an affirmative defense the employer must prove. Affirmative defenses in the realm of civil litigation are proven by the party asserting them. I.R.C.P. 8(c); *see, e.g. Hawley v. Green,* 117 Idaho 498, 503, 788 P.2d 1321 (1990) (Defendant has burden of proving every element necessary to establish affirmative defense of statute of limitation). Similarly here, it is reasonable to require that the bar to compensation be proven by the employer. It seems unreasonable to believe that the legislature intended to shift to claimants the burden of proving a negative, that is, of disproving an intention to injure oneself. The allocation of the burden to claimants, furthermore, might work mischief in the field of workers' compensation litigation, as it might lead to a burdening of the record with testimony from claimants that they did not intend to injure themselves, and costly testimony from expert psychologists or psychiatrists as to state of mind, as such would be the claimant's burden in his or her case-in-chief.

We are also mindful of another principle of statutory construction that admonishes courts to construe one section of a statute consistently, where possible, with other sections of the same statute. At the time of the 1971 amendment of Section 72–208, another section, Section 72–228, was added to the Workers' Compensation statute, as follows:

**Presumption favoring certain claims.—** In any claim for compensation, where the employee has been killed, or is physically or mentally unable to testify, and where there is unrebutted evidence that indicates that the injury arose in the course of employment, it shall be presumed, in the absence of substantial evidence to the contrary, that the injury arose out of the employment, that sufficient notice of the accident causing the injury has been given, and that the injury or death was not occasioned by the employee's intoxication or by his wilful intention to injure himself or to injure another.

The Commission ruled in this case that Section 228 was inapplicable because Seamans testified competently, and that ruling is not challenged on appeal. Maaco argues, however, that because Section 228 came into the statute at the same time that the provision placing the burden of proof on the employer was removed means that burden shifting to an employer applies only in the limited context of I.C. § 72–228, i.e., where a claimant is deceased or otherwise unable to testify.

This argument is unpersuasive. Claimants who fall under the provision of Section 72–228 are relieved from the initial burden of showing that the injury arose out of employment, that sufficient notice of the accident causing the injury has been given, and that the injury or death was not occasioned by the employee's intoxication or by his wilful intent to injure himself or to injure another. Only when the employer comes forward with substantial evidence to the contrary, although not a preponderance, must the claimant then bear the burden of proof on any of these three issues. *Evans v. Hara's, Inc.,* 123 Idaho 473, 478, 849 P.2d 934, 939 (1993). Seamans did not benefit from this presumption. He was required to prove by a preponderance of the evidence that the injury arose out of his employment. Since Seamans did

not benefit from the presumption of I.C. § 72–228, Maaco must present more than the merely "substantial" evidence required under Section 228 to prove the proposition it raised in its answer, namely that Seamans intentionally injured himself.

To conclude, we interpret I.C. § 72–228 in accordance with the above stated principles of statutory construction and conclude that the legislature intended to place the burden of proving the affirmative defense of wilful intention by the employee to injure himself or herself upon the employer.

In the present case, the Commission found that it could not determine whether Seamans' fall from the roof was intentional because the evidence was in equipoise, or equally balanced. The Commission further found that because the evidence was in equipoise, Maaco had thus failed to meet its burden of proving by a preponderance of the evidence, as required by I.C. § 72–708, that Seamans intentionally fell from Maaco's roof. We hold that there is substantial and competent evidence to support this conclusion. All of the medical experts were highly qualified and the Commission found the quality of the testimony to be excellent. Six medical experts testified. Three of the doctors were of the opinion that Seamans suffered no preexisting active psychotic illness before the fall, and that he therefore did not intentionally fall from the roof. The other three doctors testified that Seamans was very psychotic at the time he fell and that the fall was intentional. Thus, we hold that the Commission correctly found that the evidence of an intentional fall was offsetting, and that, therefore, Seamans met his burden of proving that the fall was accidental and that he is entitled to worker's compensation benefits.

**C. Substantial and Competent Evidence Exists in the Record to Support the Commission's Finding That Seamans Suffered an Idiopathic Fall, Notwithstanding the Finding That the Evidence Was in Equipoise With Regard to the Issue of Whether Seamans' Injuries Were Proximately Caused by his Wilful Intent to Injure Himself.**

The Commission found that even if the fall was attributable in part to Seamans'

mental illness, the direct injuries from his fall are compensable because it was an idiopathic fall. An idiopathic fall is one which is personal in nature as opposed to neutral or workplace in origin. The Commission relied on *Evans v. Hara's, Inc.*, 123 Idaho 473, 849 P.2d 934 (1993), which held that an injury resulting from an idiopathic fall does not arise out of employment and is not compensable without evidence of some contribution from the workplace. The Commission found that Seamans was in the course of his employment, on a sloped roof fifteen feet above the ground, and that unlike the claimant in *Evans*, Seamans' fall was occasioned by an added risk from his employment. Because there was a contribution from the workplace, the Commission found that Seamans' fall arose out of his employment, and that his injuries were therefore compensable.

On appeal, Maaco argues that the idiopathic fall rule does not relieve Seamans of his burden of proving an accident. Maaco claims that this rule may be used to meet the "arising out of employment" requirement of the definition of "injury", but that the Commission must first determine that Seamans carried his burden of proof that an accident occurred. We hold that this argument is without merit because the Commission did find that a compensable accident had occurred. What the Commission could not determine was whether the accident was intentional.

Maaco next argues that if the fall does constitute an idiopathic fall, then Seamans' fall from the roof must have been an intentional fall caused by his mental illness, and therefore, his mental condition preexisted the fall and he is not entitled to benefits. We find this argument also to be without merit. Maaco has failed to prove by a preponderance of the evidence that the fall was intentional. The fall from Maaco's roof to the ground resulted in injuries which Seamans would not otherwise have suffered had he not been fifteen feet above the ground on a sloped roof retrieving tools used to clean the stack. The personal nature of the fall from the roof to the ground, even if due to a personal condition such as an inability to stop himself from rolling, is still compensable due to the contribution of the workplace environment. Further, the elements of an idiopathic fall do not require that Seamans prove he did not wilfully intend to injure himself. Thus, we hold that there is substantial and competent evidence to support the Commission's conclusion that Seamans suffered an idiopathic fall.

**D. Seamans is not Entitled to Attorney's Fees Pursuant to I.C. § 72–804.**

I.C. § 72–804 allows for an award of attorney's fees on appeal if the Court determines that the employer brought the appeal without any "reasonable" basis. We hold that the appeal was not frivolous or without any reasonable ground, especially in light of the Commission's inability to determine whether Seamans' fall was intentional due to the balancing of the evidence. Thus, Seamans is not entitled to attorney's fees.

## IV.

## CONCLUSION

We hold that the Commission did not fail to consider unrefuted evidence of Seamans' state of mind. In fact, the Commission considered all of the evidence and issued the findings of fact necessary to support its award.

We hold that Seamans' met his burden of proving that he was injured and that his injuries were the result of an accident arising out of and in the course of his employment with Maaco. We further hold that Maaco did not meet its burden of proving by a preponderance of the evidence that Seamans' fall from the roof was intentional pursuant to I.C. § 72–208.

We also hold that there is substantial and competent evidence in the record to support the Commission's finding that even if the fall was attributable in part to Seamans' mental illness, it was an idiopathic fall due to the contribution of the workplace to his injuries.

Accordingly, the decision of the Commission is affirmed.

No attorney's fees on appeal. Costs on appeal to respondent.

SCHROEDER, J., concurs.

McDEVITT, C.J., concurs in the result.

JOHNSON, J., joined by TROUT, J., dissents.

JOHNSON, Justice, dissenting.

I respectfully dissent because I am very concerned about the rationale contained in the Court's opinion. In my view, this rationale creates major confusion concerning the burden of proof a claimant bears in a worker's compensation case.

The pivotal circumstance in this case is the finding of the Commission that "it is impossible to determine whether Claimant intentionally fell from the roof." This is described by the Commission as the evidence being in "equipoise." This finding by the Commission makes this a very unique case. Ordinarily, the Commission merely finds the necessary facts to support an award or that the claimant has not proved one or more of the necessary facts. Here, the Commission by declaring an "equipoise" in the evidence undercuts its conclusion that "Claimant has met his burden of proving that he suffered an accident...."

In *Evans v. Hara's, Inc.* 123 Idaho 473, 479, 849 P.2d 934, 940 (1993), we reiterated the basic burden of proof the claimant bears: "A worker's compensation claimant has the burden of proving, by a preponderance of the evidence, all the facts essential to recovery." For a personal injury to be compensable, it must be one caused by an accident. I.C. § 72–102(15)(a). This is one of the facts the claimant must prove by a preponderance of the evidence. Part of the definition of an "accident" is that it must be "an unexpected, undesigned, and unlooked for mishap, or untoward event." Therefore, the claimant must prove by a preponderance of the evidence that the personal injury for which compensation is sought was caused by an unexpected, undesigned, and unlooked for mishap, or untoward event. If the personal injury were intentionally caused by the claimant, obviously it would not be one caused by an accident. Here, the Commission explicitly found that there was no preponderance of the evidence on the question of the causation of the claim-

ant's personal injury. Therefore, the claimant did not fulfill the burden of proof he had.

The confusion in this case arises because the Commission relied on authority that is no longer applicable in placing the burden on the employer to prove by a preponderance of the evidence that the fall was intentional. The Commission cited *Potter v. Realty Trust Co.*, 60 Idaho 281, 90 P.2d 699 (1939) for this proposition. In *Potter*, the circumstances concerned intoxication, not intentional injury, and the Court's decision was decided based on I.C.A. § 43–1002 (1932). *Id.* at 286–87, 90 P.2d at 701–02. This statute specifically provided:

No compensation shall be allowed for an injury caused:

1. By the employee's wilful intention to injure himself; or,

2. By his intoxication.

*If the employer claims an exemption or forfeiture under this section the burden of proof shall be upon him.*

(Emphasis added).

When the legislature recodified the worker's compensation law in 1971, it included I.C. § 72–208 in its current form, which does not contain the statement putting the burden of proof on the employer contained in I.C.A. § 43–1002, upon which the Court relied in *Potter*.

In my view, the proper application of the burden of proof in the present case is to require the claimant to prove by a preponderance of the evidence that his personal injury was caused by an accident. In this context, I.C. § 72–208(a) is nothing more than a self-evident declaration that intentional injury by an employee is not compensable.

I.C. § 72–228 creates a presumption in some cases "in the absence of substantial evidence to the contrary, ... that the injury or death was not occasioned by the employee's ... wilful intention to injure himself. ...." This presumption provides insight into the appropriate construction of the legislature's intention concerning burden of proof in these circumstances. If the legislature had not intended that the burden is on the claimant to prove that an accident caused the personal injury for which compensation is

sought, why would the claimant need a presumption to negate intentional injury? Stated otherwise, if the burden were on the employer to prove intentional injury, no presumption would be necessary to support compensation if the employer did not prove intentional injury by a preponderance of the evidence. The Court's opinion deprives the presumption contained in I.C. § 72–228 of any meaning.